IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 04-cv-02532-WDM-MJW**

JOHN ROUNDS,

Plaintiff,

v.

DENNIS CORBIN,
PAUL HOLLENBECK, and
WILLIAM ZALMAN,

Defendants.

---

## RECOMMENDATIONS ON
## STATE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST
## ADMINISTRATIVE REMEDIES (Docket No. 75), as amended (Docket No. 78), and
## STATE DEFENDANTS' MOTION TO DISMISS (Docket No. 76)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by District Judge Walker D. Miller on March 8, 2005.  (Docket No. 11).

**Plaintiff's Prisoner Complaint**

In his Prisoner Complaint (Docket No. 3), brought pursuant to 42 U.S.C. § 1983,

the pro se incarcerated plaintiff names the following three defendants: Dennis Corbin,

Major, Physical Plant Manager, Canon Minimum Center, in his individual and official

capacities; Paul Hollenbeck, Colorado Department of Corrections ("CDOC") Chief of

Classification, in his official capacity; and William Zalman, CDOC Director of Offender

Services, in his official capacity.  (Compl. at 2).  Plaintiff alleges the following in his two

2

claims for relief.

**Claim One.**  Plaintiff characterizes his first claim as "Equal Protection of the laws, Civil Contempt, Fundemental [sic] Fairness, Cruel and Unusual Punishment." (Compl. at 4).  According to the plaintiff, who purportedly has a Colorado State Journeyman Electrician license which he obtained while incarcerated, defendant Corbin requested and authorized electrical work to be performed at the Colorado Territorial Correctional Facility ("CTCF") which was in violation of Colorado state construction laws.  More specifically, some of the electrical work done in the facility allegedly was not up to code, was done without necessary permits and required inspections, and was done without supervision by an employee who was not currently licensed.  Plaintiff claims that defendant Corbin's actions show deliberate indifference to the safety and well-being of the inmates and staff at CTCF.

Plaintiff seeks the following relief with regard to his first claim.  First, he asks that defendant Corbin be held in civil contempt, with appropriate sanctions administered, for violating an Order issued in Ramos v. Lamm, 520 F. Supp. 1059.  (Compl. at 21).  Next, if the Ramos case "has not stood up to the test of time," the plaintiff seeks "a mandatory and permanent injunction requiring C.D.O.C., its employees and prison contractors, to follow all Statutes of the State of Colorado, especially all the laws pertaining to construction, remodeling and repair, for the safety of the staff and offender population" (Compl. at 21), as well as "a permanent Declatory [sic] Order to all C.D.O.C. employees' [sic] and prison contract employees' [sic], notifing [sic] them that they are not above any Colorado or State or Federal Laws and will be held personally liabel [sic]

for all expenses, fines and penalties, for any violation of these laws." (Compl. at 22).
In addition, plaintiff wants the State Electrical Inspector to inspect all electrical work
done by a certain CDOC employee, especially certain work authorized by defendant
Corbin, that the CDOC redo all electrical work found to be in violation of certain
standards, and that defendant Corbin be responsible for all fines, penalties, and
expenses as a result of having to bring the electrical work back up to code. (Compl. at
22).

**Claim Two.** Plaintiff characterizes this claim as "[r]etaliated against for
exercising First Amendment protected conduct." (Compl. at 11). Plaintiff claims that
"not wanting to have any part of the illegal electrical work, as previously stated,
including the hostile work environment, the plaintiff began looking for another work
assignment at C.T.C.F. . . ." (Compl. at 11, ¶ 66). He found a new assignment at the
Tag Plant, and on the same day he had sent his concerns raised in Claim One to the
CDOC Investigation Division, he asked his current work supervisor to be released for a
job change and had his case manager proceed with the necessary steps for the job
change. (Compl. at 11-12, ¶¶ 67, 71, 72).

On January 9, 2003, plaintiff's case manager reported to the plaintiff that he had
received the necessary approval from the CTCF Classification/Job Board Committee
for the job change. (Compl. at 12, ¶ 73). The only remaining step was for the plaintiff
to be released from his current electrical maintenance position. (Compl. at 12, ¶ 74).
On January 14, 2003, however, the plaintiff's work supervisor advised the plaintiff that
defendant Major Corbin would not release the plaintiff for his job change because he

4

had a "facility need hold" on the plaintiff, which "is an agreement between the facility and the C.D.O.C. headquarters to stop the unnessecary [sic] movement of certain inmates the facility wishes to maintain for thier [sic] work skills." (Compl. at 12, ¶¶ 75, 76).

Plaintiff then "proceeded with his job change request through the C.D.O.C. Grievance process." (Compl. at 12, ¶ 77). He started that process on January 27, 2003, by filing an Informal Grievance against defendant Corbin and then proceeded with the three-step formal grievance process. (Compl. at 12-14). He received his response to his Step III Grievance on April 8, 2003. (Compl. at 14, ¶ 96). Two days later, on April 10, 2003, "plaintiff decided to start another grievance, with a [sic] Informal Attempt . . . , against the defendant Major Corbin for not following the Administrative Regulations Grievance Proceedures [sic], deny the plaintiff a fair chance for redress." (Compl. at 14, ¶ 98). The following day, the plaintiff was transferred to the Central Transportation Unit in CTCF to await a lateral transfer to a new facility on April 24, 2003. (Compl. at 15, ¶ 99).

Plaintiff alleges that this transfer was retaliatory and caused him to lose "a premium, forth [sic] floor, outside corner, single cell in C.T.C.F. Cellhouse 1, a privilege earned with being, C.O.P.D. report free, good work ratings and with a good repore [sic] with the cellhouse [sic] staff, to be double bunked at his new facility." (Compl. at 15, ¶ 101). He also complains that he lost his hobby permit and supplies, hobby shop work stall, and his chance at a "premium job position." (Compl. at 15, ¶¶ 102, 103).

Plaintiff alleges that "[t]he act of vindictiveness by the defendant major Corbin

can be seen by the fact he released the plaintiff, from his facility hold, just six weeks after he notified the plaintiff in writing, that he wouldn't for at least a year." (Compl. at 15, ¶ 104).  Plaintiff contends "[t]hat, in part, the reasons for this alleged retaliatory transfer, bythe [sic] defendant, Major Corbin, stem from one, or all of the plaintiffs [sic] actions done in the four plus months prior to this retaliatory transfer. . . .  That these actions by the plaintiff, consisted of: A, asking for a job change, B, attempts to end illegal electrical work and C, filing grievances against the defendant Major Corbin." (Compl. at 15, ¶¶ 105, 106).

Plaintiff further claims that defendants Hollenbeck and Zalman "were also involved in the alleged retaliatory transfer of the plaintiff" because according to CDOC regulations, such lateral transfers must be approved by the Chief of Classification and the Chief of Offender Services.  (Compl. at 16, ¶¶ 111, 113).  Plaintiff thus asserts that these two defendants or their "designees at the time failed to ensure that the plaintiff wasn't being transfered [sic] for the purpose of retaliation by the defendant Major Corbin." (Compl. at 16, ¶ 116).  Furthermore, plaintiff claims that Zalman, "as Director of Offender Servives [sic], which oversees all C.D.O.C. facility transfers, failed to have the proper procedures in place to ensure that the lateral transfer of the plaintiff was not done for retaliatory purposes." (Compl. At 16-17, ¶ 117).  Plaintiff also avers "'[t]hat the defendants Paul Hollenbeck and William Zalman, due to there [sic] C.D.O.C. positions responsibilities, were also directly invoved [sic] in this retaliatory transfer against the plaintiff for exercising his First Amendment Rights." (Compl. at 19, ¶ 143).

Plaintiff seeks the following relief for this second claim.  First, he seeks a

6

transfer back to CTCF with all of his privileges returned, redaction of certain

information from his file, monetary relief, and "[p]rotection from any possible future

malice intent from C.D.O.C. and its employees." (Compl. at 22-23). He also asks that

defendant Corbin be held for federal criminal prosecution and that the court review the

CDOC transfer policy and direct that certain provisions be included in the CDOC

regulations. (Compl. at 23).

**Defendants' Motions to Dismiss**

Now before the court for report and recommendation are the State Defendants'

Motion to Dismiss Failure to Exhaust Administrative Remedies (Docket No. 75), as

amended (Docket No. 78), and the State Defendants' Motion to Dismiss (Docket No.

76). Plaintiff filed a response to each motion (Docket Nos. 111 and 112). The court

now being fully informed makes the following findings, conclusions of law, and

recommendations.

The court has not considered the deposition transcripts attached to the motions

because they were not necessary to this court's recommendations and because

consideration of the transcriptions may very well require the court to convert the

motions to motions for summary judgment. But see Thunder v. Gunja, 2005 WL

2141068, *6 (D. Colo. Aug. 11, 2005) (Recommendation of Magistrate Judge Schlatter),

approved and adopted, 2005 WL 2372816 (D. Colo. Sept. 27, 2005) ("In this case, the

issue of exhaustion is central to the claims presented by the plaintiff, and therefore, it is

appropriate that the court consider any relevant documentation or information provided

outside of the pleadings without converting the motion to one for summary judgment.").

7

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  [I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."  Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001) (citing Fed. R. Civ. P. 10(c); Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991) (written documents attached to the complaint as exhibits are considered part of the complaint for consideration in a Rule 12(b)(6) motion)).  In addition, the court is obligated to construe the pleadings and papers of a pro se litigant liberally.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA"), *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Therefore, defendants do not waive the exhaustion defense by waiting to raise it, even on the eve of trial.  Id.

8

Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002).  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." <u>Id.</u> at 524 (citing <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001)).  The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." <u>Booth</u>, 532 U.S. at 741, n.6.  "In *Booth*, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation." <u>Beaudry</u>, 331 F.3d at 1167.

The Tenth Circuit has "held that the PLRA's section 1997e(a) presents a 'total exhaustion requirement' such that 'the presence of unexhausted claims in [a prisoner]'s complaint require[s] [a] district court to dismiss his action in its entirety without prejudice." <u>Price v. Shinn</u>, 2006 WL 1123787, *1 (10th Cir. Apr. 28, 2006) (citing <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1189 (10th Cir. 2004)).

The CDOC has a grievance procedure available to inmates which entails first a written informal grievance and then a formal three-step written grievance procedure. <u>See</u> Administrative Regulation ("AR") No. 850-04.  In his Prisoner Complaint, the plaintiff checked off "Yes" in response to the question of whether he had exhausted his available administrative remedies.  (Compl. at 20).  When asked to briefly explain his answer, plaintiff stated:

9

> Attached, all steps to Grievance No. CT-3-433, Retaliatory
> Transfer.  Also, good faith efforts to notify about the State Law violations,
> Grievance No. CT03-433, steps I & II (highlighted), Grievance No. CT-3-
> 257, Job Change, steps II & III, (highlighted), plus the C.D.O.C. Inspector
> General Letter.
> (ref: Wyatt V. Leonard, 193 F.3d. 876, Fish V. Sapp, 3 Fed. Appx. 334)

(Compl. at 20).

In their first motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6) and (h)(2), the defendants assert that the Complaint must be dismissed because none of the grievances filed and attached to the Complaint have anything to do with the claims made against the named defendants.

**Claim One.**  With regard to Claim One, plaintiff essentially admits in his Response (Docket No. 111) that he did not exhaust his administrative remedies.  He claims, however, that he was unable to do so as a direct result of the defendants' actions.  (Docket No. 111 at 3).

Under the provisions of § 1997e(a), the plaintiff is required to exhaust administrative procedures that are made "available" to him.  In an unpublished decision, the Tenth Circuit has found that under the plain meaning of the term "available," a prisoner must exhaust those procedures that he is reasonably capable of exhausting.  Hoover v. West, 2004 WL 309338 (10th Cir. Feb. 19, 2004) (citing Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998)).  "Where prison officials prevent or thwart a prisoner from utilizing an administrative remedy, they have rendered that remedy 'unavailable' and a court will deem that procedure 'exhausted.'" Id. at *3.  In addition, the Tenth Circuit has noted that other circuits have held that

10

administrative remedies are not "available" when prison officials refuse to provide

prisoners with grievance forms.  See, e.g., Baldauf v. Garoutte, 2005 WL 1499424, *3

(10th Cir. June 24, 2005) (citing cases), cert. denied, 126 S. Ct. 1360 (2006).  See also

Price v. Shinn, 2006 WL 1123787, *2 n.3 (10th Cir. Apr. 28, 2006) ("A prisoner who is

denied the proper grievance forms lacks an available administrative remedy."); Garcia

v. Taylor, 2004 WL 2341787, *2 (10th Cir. Oct. 19, 2004) ("We agree that refusing a

prisoner grievance forms could raise an inference that the plaintiffs have exhausted

'available' administrative remedies.") .

In this case, the plaintiff first claims that he feared further retaliation, noting,

among other things, his allegedly retaliatory transfer which he claims was due to his

filing of grievances against Corbin.  He claims that "[f]or someone whose day to day life

is controlled by C.D.O.C., being transfered [sic] after everything said, looseing [sic]

highly prized privileges, like a single cell, the wear and tear on property during a

transfer, it did not take a rocket scientist for the plaintiff to realize he was just given one

hell of a warning by C.D.O.C."  (Docket No. 111 at 4).

Furthermore, plaintiff contends that "[b]etween November and December of

2002, the plaintiff talked to his casemanager [sic], about his electrical violations

concerns.  This casemanager [sic] notified the plaintiff, he did not **believe** these

violations were a grievable issue, but the C.D.O.C. Inspector General investigates state

law violations . . . ."  (Docket No. 111 at 6) (citing Pl.'s Aff. to Chronological Order of

Events, Ex. 5 at 1) (emphasis added).  Plaintiff claims he checked the grievance

procedures in the CTCF library and did not find anything to confirm or deny his case

11

manager's statement.  (Docket No. 111 at 6-7).  Plaintiff further claims that he had no

reason to disbelieve his case manager.  (Docket No. 111 at 7).

In addition, plaintiff states that after the holidays he sent a letter to the CDOC

Inspector General's Office, dated January 2, 2003, notifying them of the purported state

electrical law violations, a copy of which is attached to the Prisoner Complaint.  Also,

plaintiff claims that on May 1, 2003, after he was transferred, he talked to his new case

manager about his pending grievances and the purported state law violations.  Plaintiff

states that "[t]his new case manager agreed with my C.T.C.F. case manager that state

law violations were not grievable.  He also told the plaintiff even if they were, he would

not give the plaintiff a grievance form, because the plaintiff needs to put that behind

him, I'm at a new facility . . . ."  (Docket No. 111 at 7) (citing Pl.'s Aff. to Chronological

Order of Events, Ex. 5 at 3).

Based upon the above, the plaintiff claims that "[s]ince the remedy that was

'available' to this plaintiff was interferred [sic] with and kept from utilizing by the

foregoing actions, it then became a remedy that was 'not available' under the PLRA

requirements . . . ."  (Docket No. 111 at 7).

This court finds, however, that even accepting for purposes of this motion that

the plaintiff's version of the facts is true, he has not presented facts from which it can

be inferred that he was actually prevented from utilizing the CDOC's grievance

procedures.  The court notes that with regard to plaintiff's purported conversation in

November/ December 2002 with John Gahn, his CTCF case manager, plaintiff merely

states in his Affidavit to Chronological Order of Events :

12

> Talked to John Gahn, CTCF Casemanager [sic], a couple of times during this period of time, concerning a state law violations and he told me two things of interest.
>
> . . .
>
> 2.  Since these electrical violations are state law, **he wasn't sure if the DOC Grievance regulations covered state law violations**, but the DOC Inspector General, investigates all possible state law violations.

(Pl.'s Aff. to Chronological Order of Events, Ex. 5 at 1) (emphasis added).

Furthermore, in his Response to the defendants' motion, plaintiff merely states that his case manager "did not **believe** these violations were a grievable [sic] issue." (emphasis added).  (Docket No. 111 at 6, ¶ 27).  This court finds that these comments do not establish that actions by any CDOC employee prevented the plaintiff from filing a grievance regarding his concerns about the electrical work done at the facility.

Furthermore, plaintiff admits in his Response that he checked the CDOC regulations concerning grievances and did not find anything to confirm or deny his case manager's statement.  (Docket No. 111 at 6-7).  In fact, the regulation lists certain types of issues for which the grievance procedure may not be used to seek review, and that list does not include the type of complaint raised by the plaintiff.  See AR 850-04(IV)(B)(1)(i).[1]

---

[1]That provision of the regulation provides:

> This grievance procedure may not be used to seek review of COPD convictions, administrative segregation placement, classification, sex offender designation, or sentence computation.  Code of Penal Discipline convictions and administrative segregation placements have exclusive appeal procedures.  Classification is entirely at the discretion of the Administrative Head and classification committee of each institution.  Sex offender designation and sentence computation arise from judicial proceedings involving individual offenders and require judicial review and adjustments.  Calculations and/or awards of meritorious /earned time

13

In addition, while the plaintiff also contends that his case manager at his new

facility would not give him a grievance form, the documents attached to the Complaint

show that the plaintiff was able to file a grievance about his transfer, and thus during

the time period at issue had a grievance form available to him on which to grieve the

electrical issues, but he instead chose to file a grievance about the transfer.

Previously, plaintiff also filed grievances about the denial of his request for a job

change and his complaint about Corbin's involvement in the grievance procedure, so

the plaintiff also had grievance forms available to him at that time on which he could

have filed a grievance about his electrical work concerns, but he failed to do so.   See

Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) (dismissal for failure to exhaust was proper

because the plaintiff failed to allege that the prison official who refused to provide a

grievance form was the only source of those forms or that plaintiff made other attempts

to obtain a form or file a grievance without a form).

While the plaintiff also claims his fear of reprisal as a reason for not exhausting

Claim One, any inmate could easily make such a claim, and such speculation should

not allow inmates to avoid the statutorily-mandated exhaustion requirement.

Plaintiff also seems to assert that he made good faith attempts to put the

defendants on fair notice of Claim One, thereby excusing him from following the CDOC

grievance procedures.  He notes that he discussed the situation with his CTCF case

manager, "and taking his belief as truth, that the C.D.O.C. Inspector General's Office

---

credits are grievable.

AR 850-04(IV)(B)(1)(i).

14

would be the proper approach, the plaintiff shortly there after [sic] sent a letter to this

C.D.O.C. Inspector General's Office, notifing [sic] these prison official's [sic] of the state

electrical law violations." (Docket No. 111 at 8). Next, he notes that he put his state

electrical law violations concerns in his Step II and III job change grievances, which are

attached to his Complaint. He claims that the response to the Step III grievance

included a recommendation that "the plaintiff should take these concerns to the State

Electrical Board . . . . " (Docket No. 111 at 8). Plaintiff claims he did not follow that

recommendation because three days later he was transferred and feared further

retaliation. (Docket No. 111 at 8). Finally, plaintiff contends that his first claim, liberally

construed, is based on a Tenth Circuit ruling in Ramos v. Lamm, 639 F.2d 559 (10th Cir.

1980), "pertaining to conditions at the very same facility and unless this ruling by the

10th Circuit is frivolous, this claim should not be dismissed." (Docket No. 111 at 8-9).

Plaintiff, however, very clearly failed to follow the CDOC's four-step grievance

procedure with regard to Claim One. Writing a letter to the Inspector General's office

and merely mentioning his concerns about the electrical work in two of the four required

steps of his grievance on another issue (the denial of his request for a job change) do

not satisfy the requirement that the plaintiff exhaust the remedies provided by the

CDOC's grievance procedure. Finally, the court does not see how a 26-year old case

(Ramos v. Lamm, cited by the plaintiff) about numerous conditions at the same facility

excuse the plaintiff from exhausting his particular claims about the facility.

The court also notes that in the response to the plaintiff's Step III grievance

concerning his job change request, plaintiff was not told, as plaintiff contends in his

15

Response, that his state electrical law violations concerns should be taken to the State Electrical Board.  Instead, the Step III Grievance Officer merely stated that plaintiff's concerns "about another individuals [sic] qualifications regarding **electrical licensing** should be directed to the State electrical board.  I cannot entertain any of the licensing issues." (Exhibit to Docket No. 111).  Plaintiff's electrical law violation concerns included more than just the issue of the licensing of one of the CDOC employees. Plaintiff was also concerned about the lack of permits and code violations.

In sum, this court finds that the plaintiff has not exhausted his first claim for relief and that he has not established that any CDOC employees prevented him from doing so.  Therefore, this action may be dismissed on this ground alone as the plaintiff is required to exhaust all of his claims prior to commencing this action.

**Claim Two.**  With regard to Claim Two, plaintiff contends that he exhausted all "available" remedies required under the PLRA.  He claims that the CDOC Grievance Procedure, AR 850-04, "does not instruct or notify a [sic] offender, layman, that individuals involved in the offenders complaint must be individually named in the grievance filed. . . .  The only requirement of C.D.O.C. Grievance Procedures has, is that the prison act, occurrence, or circumstance, concerning the complaint filed by the offender affects him or her personally." (Docket No. 111 at 9).

Furthermore, plaintiff contends that when he obtained the grievance form for the retaliatory transfer claim from case manager Burford on April 17, 2003, Mr. Burford "at that time notified the plaintiff no names were required, the grievance will be reviewed and the appropriate staff responding to each step, will investigate the complaint."

16

(Docket No. 111 at 10) (citing plaintiff's own Affidavit to Chronological Order of Events,
Ex. 5 at 3).  Plaintiff also notes that in the final step to that grievance, he was informed
that "[t]his is the final administrative response in this matter and you have exhausted
your administrative remedies."  (Docket No. 111 at 10).  Based on the foregoing, the
plaintiff contends that he has exhausted "all available" remedies pertaining to Claim
Two.

        "By requiring administrative exhaustion, Congress intended to afford 'corrections
officials time and opportunity to address complaints internally before allowing the
initiation of a federal case.'"  Wallin v. Hill, 2005 WL 1924663, at *7 (D. Colo. Aug. 10,
2005) (Miller, J.) (quoting Porter, 534 U.S. at 525).  "Failure to file a grievance against
the person a prisoner ultimately seeks to sue may constitute a failure to exhaust
administrative remedies under the PLRA."  Id. (citing Curry v. Scott, 249 F.3d 493, 505
(6th Cir. 2001) (because he was never mentioned in grievance forms, there was no
exhaustion of remedies against prison guard who allegedly failed to intervene in
second guard's assault on prisoners)).  See Lopez v. Ortiz, 2005 WL 2304733 (D.
Colo. Sept. 21, 2005) (Nottingham, J.) (CDOC inmate's grievance did not mention two
defendants or provide sufficient information to put those defendants on notice
regarding his claim.  Court found that the inmate did not exhaust his administrative
remedies with respect to those two defendants).

        Here, with regard to Claim Two, plaintiff made no mention of defendants
Hollenbeck and Zalman in any of the four steps of the grievance procedure; he merely
made specific reference to defendant Corbin's alleged retaliation.  (See, e.g., Step 1

17

Grievance - "All this evidence spell retaliation by Mjr. Corbin and is a violation of my 1st Amend Rights . . . ").

Although the plaintiff claims his case manager stated that plaintiff did not need to name individuals, the regulations, which plaintiff claims he carefully reviewed, state, at least with respect to the first step of the process, that the informal grievance shall be "addressed to the staff member(s) involved."  AR 850-04(IV)(C(1)(b).  In his informal grievance, however, plaintiff did not even mention Hollenbeck or Zalman, their titles, or any concerns regarding the review of the decision to transfer him.

Hollenbeck's and Zalman's purported involvement in the plaintiff's alleged retaliatory transfer is different from the claim plaintiff makes against defendant Corbin. It appears that the plaintiff merely attributes liability to defendant Hollenbeck and Zalman based upon their positions with the CDOC.  As noted above, plaintiff claims in the Prisoner Complaint that these two defendants were involved because according to CDOC regulations, such lateral transfers must be approved by the Chief of Classification and the Chief of Offender Services.  (Compl. at 16, ¶¶ 111, 113).  Plaintiff thus asserts that these two defendants or their "designees at the time failed to ensure that the plaintiff wasn't being transfered [sic] for the purpose of retaliation by the defendant Major Corbin."  (Compl. at 16, ¶ 116).  Plaintiff later similarly avers "'[t]hat the defendants Paul Hollenbeck and William Zalman, due to there [sic] C.D.O.C. positions responsibilities, were also directly invoved [sic] in this retaliatory transfer against the plaintiff for exercising his First Amendment Rights."  (Compl. at 19, ¶ 143). Furthermore, plaintiff claims that Zalman, "as Director of Offender Servies [sic], which

18

oversees all C.D.O.C. facility transfers, failed to have the proper procedures in place to ensure that the lateral transfer of the plaintiff was not done for retaliatory purposes." (Compl. At 16-17, ¶ 117).  These claims are different from those against defendant Corbin who allegedly vindictively put the transfer in motion based upon plaintiff's request for a job change, plaintiff's purported attempts to end allegedly illegal electrical work, and the plaintiff's grievances against Corbin.  (Compl. at 15, ¶¶ 105, 106).

Plaintiff did not put prison officials on notice of his claims against Hollenbeck and Zalman.  Therefore, this court finds that the plaintiff failed to exhaust his claim against these two defendants.

Based upon the above, this court recommends that the Prisoner Complaint be dismissed in its entirety without prejudice pursuant to 42 U.S.C. § 1997e(a).

**Failure to State a Claim**

In their second motion to dismiss (Docket No. 76), brought pursuant to Fed. R. Civ. P. 12(b)(6), (c), and (h)(2), defendants first seek dismissal of Claim Two because the plaintiff has sued defendants Zalman and Hollenbeck in their official capacities only, and plaintiff seeks monetary damages from all defendants, including Corbin (who is also sued in his official and personal capacities) in the form of "economic losses," "actual," "general," "compensatory damages," and "consequential damages."  (Compl. at 22 and 23).

It is well established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  <u>Hunt v. Bennett</u>, 17 F.3d 1263, 1267

(10th Cir. 1994).  The Supreme Court, however, has further stated that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989).  "The Eleventh Amendment does not generally bar actions for prospective injunctive relief where state officials have violated federal law."  Montez v. Romer, 32 F. Supp.2d 1235, 1241 (D. Colo. 1999).  Plaintiff here seeks both monetary and injunctive relief.  It is recommended that the plaintiff's claims for injunctive relief against the defendants in their official capacity not be dismissed on the basis of the Eleventh Amendment, but that the plaintiff's claims for monetary relief from the defendants in their official capacities be dismissed.

The court notes that in his Response (Docket No. 112 at 7, ¶ 20), the plaintiff seeks to amend his Prisoner Complaint to bring his claim against defendants Hollenbeck and Zalman in their individual capacity so as to eliminate the question of Eleventh Amendment immunity concerns.  However, pursuant to the Local Rules of Practice, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be made in a separate paper."  D.C.COLO.LCIVR 7.1(C).  Nevertheless, given that the plaintiff is pro se, the court will consider his request to amend his pleading.  That request was made over seven and one-half months after the June 30, 2005, deadline for amendment of pleadings (see Docket No. 21, Scheduling Order, at 3), and thus this court has applied the following analysis in deciding whether to allow the amendment:

20

> Where, as here, a motion to amend the pleadings . . . is filed after the scheduling order deadline, a "two-step analysis" is required.  Once a scheduling order's deadline for amendment has passed, a movant must first demonstrate to the court that it has "good cause" for seeking modification of the scheduling deadline under Rule 16(b).  If the movant satisfies Rule 16(b)'s "good cause" standard, it must then pass the requirements for amendment under Rule 15(a) . . . .

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Pumpco, Inc. v. Schenker Int'l, Inc., 204 F.R.D. 667, 668 (D. Colo. 2001) (quotations and citations omitted).

The second step is consideration of whether the plaintiff have satisfied the standard for amendment of pleadings required under Fed. R. Civ. P. 15(a):

> Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."  Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.

Id. at 669 (citation omitted).

This court finds that the plaintiff has not satisfied the first step in this analysis as he has not established good cause to extend the deadline within which he may seek leave to amend the complaint.  In his Prisoner Complaint, the plaintiff very clearly sued defendant Corbin in both his official and individual capacities, yet he

also very clearly sued the other two defendants only in their official capacities.

Plaintiff was thus aware that the defendants could be sued in different capacities, yet

he chose to sue defendants Hollenbeck and Zalman in only one capacity.  Plaintiff

has not shown that the scheduling deadline could not be met despite his diligent

efforts.

Defendants next assert that Claim One does not state a cognizable § 1983

claim, noting that plaintiff states in the Prisoner Complaint that "[t]his first claim . . .

brings before this court, concerns C.D.O.C. employee's [sic] violating State

Construction Laws, specifically, Title 12, Professions and Occupations, Article 23,

Electricians, of the Colorado Revised Statutes (C.R.S.)."  (Compl. At 4, ¶ 7).

Defendants assert that § "1983's jurisdictional counterpart, 28 USC § 1343(3)

provides for jurisdiction over civil actions to redress deprivation of any right, privilege

or immunity secured by the Constitution of the United States, or by any Act of

Congress providing for equal rights.  Plaintiff's allegations do not make any such

allegations and the first claim must be dismissed."  (Docket No. 76 at 3).

This court does not agree that dismissal of Claim One is warranted on this

ground.  Even though the plaintiff does allege state code violations in his Prisoner

Complaint, reading the pro se Prisoner Complaint liberally, as this court is required

to do, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), it is evident that the plaintiff is

raising an Eighth Amendment claim that defendant Corbin's acts jeopardized the

safety of the plaintiff and other inmates.  Therefore, Claim One should not be

dismissed on this ground.

22

Finally, defendants assert that injunctive and other relief is not available. Defendants contend that plaintiff wants this "court to become a regional building code inspection and enforcement agency responsible for the minutia of what type electrical conduit should be used, and who should install it in prison remodel jobs." (Docket No. 76 at 4) (footnote omitted).  This court recommends that the plaintiff's claim for injunctive relief not be dismissed on this ground at this time.  If Judge Miller rejects this court's recommendation on Docket No. 75 (the State Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies), then it is recommended that Judge Miller address the issue of appropriate injunctive relief in his ruling following trial on the merits.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the State Defendants' Motion to Dismiss Failure to Exhaust Administrative Remedies (Docket No. 75), as amended (Docket No. 78), be granted, and that the Prisoner Complaint be dismissed in its entirety without prejudice for failure to exhaust administrative remedies.  It is thus further

**RECOMMENDED** that the State Defendants' Motion to Dismiss (Docket No. 76) be denied as moot.  However, if the above Recommendation concerning Docket No. 75 is not accepted, then it is further recommended that the State Defendants' Motion to Dismiss (Docket No. 76) be granted in part and denied in part.  More specifically, it is recommended that the motion be granted to the extent that the plaintiff's claim for damages against all three defendants in their official capacities be dismissed with prejudice.  The only claims remaining would thus be plaintiff's claim for damages

against defendant Corbin in his individual capacity and plaintiff's claims for declaratory and injunctive relief.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  June 7, 2006                    <u>s/ Michael J. Watanabe</u>
      Denver, Colorado            MICHAEL J. WATANABE
                                    United States Magistrate Judge