IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 04–cv–02532–CMA–KMT

JOHN ROUNDS,

     Plaintiff,

v.

DENNIS CORBIN,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

     This case involves a claim that Defendant violated Plaintiff's First Amendment rights.

This matter is before the court on Plaintiff's "Motion for Summary Judgment" ([Doc. No. 213]

[hereinafter "Pl.'s Mot."]) and Defendant "Dennis Corbin's Motion for Summary Judgment"

([Doc. No. 215] [hereinafter "Def.'s Mot."]), both filed October 15, 2008.

### PROCEDURAL HISTORY

     Plaintiff filed his *pro se* Prisoner Complaint on December 8, 2004 alleging violations of

his First and Eighth Amendment rights by Defendant Corbin and two other defendants.  (Doc.

No. 3.)  Defendants filed two motions to dismiss on December 16, 2005.  (Docs. No. 75, 76.)  On

Magistrate Judge Watanabe's recommendation (Doc. No. 121), District Judge Miller granted

Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies as to all

defendants.  ([Doc. No. 134] [filed June 30, 2006])  *See Rounds v. Corbin*, 2006 WL 1832680, at

*1 (D. Colo. June 30, 2006).  On June 28, 2007, the Tenth Circuit Court of Appeals reversed the

district court's dismissal with respect to Plaintiff's First Amendment retaliation claim against

Defendant Corbin and remanded the case for further proceedings.[1]  ([Doc. No. 154] [filed June

28, 2007].)  Plaintiff filed his Amended Prisoner Complaint on September 6, 2007 ([Doc. No.

160] [hereinafter "Am. Compl."]) and his Motion for Summary Judgment on October 15, 2008.

([Doc. No. 213] [hereinafter "Pl.'s Mot."].)  Defendant Corbin filed a Response on November

17, 2008.  ([Doc. No. 226] [hereinafter "Def.'s Resp."].)  Plaintiff filed his Reply on December

4, 2008.  ([Doc. No. 229] [hereinafter "Pl.'s Reply"].)

On October 15, 2008, Defendant Corbin filed his Motion for Summary Judgment.

(Def.'s Mot.)  Plaintiff filed a Response on November 10, 2008.  ([Doc. No. 223] [hereinafter

"Pl.'s Resp."].)  Defendant filed his Reply on November 18, 2008.  ([Doc. No. 227] [hereinafter

"Def.'s Reply"].)  Jurisdiction is premised upon 42 U.S.C. § 1983 (2008).  These motions are

ripe for review and recommendation.

## STATEMENT OF THE CASE

Plaintiff alleges his First Amendment rights were violated when he was transferred to

another facility in retaliation for filing formal prisoner grievances against Defendant Dennis

Corbin (Corbin).  (Am. Compl.)  At the time of the alleged transfer, Plaintiff was an inmate in

---

[1] In reversing, the Tenth Circuit Court of Appeals found that the district court's dismissal was based on the since-defunct "total exhaustion rule," *see Jones v. Bock*, 127 S. Ct. 910, 925-26 (2007).

the custody of the Colorado Department of Corrections (hereinafter "CDOC"), at the Colorado Territorial Correctional Facility (hereinafter "CTCF").  (*Id.* ¶¶ 1–2.)  Plaintiff asserts that during his incarceration at CTCF, he "received his Colorado State Journeyman Electrician license" and was employed as an electrician in the CTCF "maintenance department" managed by Defendant Corbin.  (*Id.* ¶¶ 3–4.)

Plaintiff claims he first witnessed Defendant Corbin "request[] and authorize[]" electrical work which violated state and national electrical codes "during the summer of 2002."  (*Id.* ¶¶ 8–13.)  Plaintiff states he "brought to the defendant's attention, on several occasions, the violation[s] of state electrical laws that the defendant had committed."  (*Id.* ¶ 19.)  Plaintiff claims Defendant Corbin's response was "[do not] 'worry about it, we are the state, nothing will come of it.'"  (*Id.*)  On January 2, 2003, Plaintiff allegedly mailed a letter stating these concerns to the "CDOC Inspector General's Office."  (*Id.*; *see also* Doc. No. 3.)  Plaintiff asserts that, in order to avoid being "associated with the foregoing violations,"  he requested a "job change" which was approved by the "CTCF Classification/Job Board" on January 9, 2003.  (Am. Compl. ¶¶ 25–29.)  Plaintiff claims that on January 14, 2003 he was notified that "Defendant [] Corbin, Head of CTCF Maintenance, would not release the plaintiff from his job assignment because the defendant had a facility need hold placed on the plaintiff." [2]  (*Id.* ¶ 30.)

---

[2] According to Plaintiff, a facility need hold "is an agreement between the facility and the CDOC Headquarters, to not move certain inmates the facility or department[] wishes to maintain for their work skills or completion of a require[d] program."  (Am. Compl. ¶ 31.)

3

Plaintiff alleges he commenced the "CDOC [g]rievance process" on January 27, 2003, filing four prisoner grievances against Defendant Corbin, "requesting to be released [from the facility need hold] for the job change." (*Id.* ¶¶ 32–44; Ex. 1A–D.)  Plaintiff states that on April 8, 2003, he received the denial of his Step III grievance. (*Id.* ¶ 48; Ex. 1E.)  Plaintiff allegedly commenced a new grievance process on April 10, 2003 against Defendant Corbin for allegedly "fail[ing] to follow grievance procedures" in the previous grievance process. (*Id.* ¶ 50.)  Plaintiff claims that the same day, April 10, 2003, his case manager, John Gahn, informed him that "[Plaintiff] was being transferred . . . [and] that he should not have tried for that job change and filed those grievance's [sic] against Mr. Corbin." (*Id.* ¶ 51.)  Plaintiff asserts he was transferred to the Central Transportation Unit (hereinafter "CTU") on April 11, 2003, and to Arkansas Valley Correctional Facility (hereinafter "AVCF") on April 24, 2003. (*Id.* ¶¶ 52–53.)  Plaintiff maintains that Defendant Corbin "orchestrated" this transfer in retaliation for the prisoner grievances Plaintiff filed against the defendant. (*Id.* ¶¶ 77–98.)  Plaintiff alleges he sustained "losses due to [the] alleged retaliatory transfer" and now seeks compensatory damages and injunctive relief. (*Id.* at 14–17.)

Defendant seeks summary judgment on Plaintiff's claim on the following grounds: 1) Corbin did not personally participate in the plaintiff's transfer; 2) Defendant is entitled to absolutely immunity from suit in his official capacity under the Eleventh Amendment; 3) Defendant is entitled to qualified immunity from suit in his individual capacity; and 4) there is no genuine issue of material fact as to whether Defendant Corbin violated Plaintiff's First

Amendment rights and, therefore, Defendant is entitled to judgment as a matter of law.  (Def.'s Mot.)

## STANDARD OF REVIEW

### 1.      *Pro Se Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.**     ***Summary Judgment***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ.

P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under

the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable

jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th

Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The court may consider only admissible evidence when ruling on a summary judgment

motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The factual record and reasonable inferences therefrom are viewed in the light most favorable to

the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### 1. *Defendant's Motion for Summary Judgment*

#### A. *Official Capacity Claims*

##### 1) *Eleventh Amendment Immunity*

Defendant Corbin moves the Court to dismiss Plaintiff's claim against him in his official capacity based on Eleventh Amendment immunity. Section 1983 imposes civil liability upon any "person" who subjects another to a constitutional deprivation. 42 U.S.C. § 1983. Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for every such litigant. It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of their federal rights. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Hunt v. Colo. Dept. of Corr.*, 271 Fed. Appx. 778 (10th Cir. 2008). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated

7

a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff alleges a claim against Defendant Corbin in his individual and official capacities. (Am. Compl. at 2.) It is undisputed that at all times relevant to Plaintiff's claim, Defendant Corbin was employed by the CDOC. (Def.'s Mot., Aff. of Dennis Corbin at 1.) Nor can it be disputed that there has been no waiver of immunity by Colorado or its state agencies from suits for damages under § 1983. As Defendant Corbin is entitled to absolute immunity under the Eleventh Amendment, Plaintiff's claim for compensatory damages against Defendant Corbin in his official capacity should be dismissed with prejudice.[3]

## B.   *Individual Capacity Claims*

### 1)   *First Amendment Retaliation*

Access to courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for redress of grievances. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985). "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948. However, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in

---

[3] This conclusion does not require dismissal of Plaintiff's claim against Defendant Corbin in his official capacity for injunctive relief.

prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, 2008 WL 280839 at *7 (D. Colo. 2008) (unpublished decision) (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). A plaintiff must allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights"—i.e., the plaintiff must prove that "but for" the retaliatory motive, the adverse response would not have taken place. *Peterson v. Shanks* at 1144 (citations omitted).

First, Plaintiff alleges "that Defendant Dennis Corbin . . . had the plaintiff transferred due to the plaintiff's complaints about the state electrical law violations, authorized by the defendant." (Am. Compl. at 14.) Plaintiff filed four prisoner grievances from January 27, 2003 to March 21, 2003 complaining of the defendant's denial of his job change request. (*Id.* at 3–6.) Plaintiff alleges he commenced a new round of prisoner grievances against Defendant Corbin on April 10, 2003 and was transferred out of CTCF on April 11, 2003. (Am. Compl. ¶ 50–53.) The filing of formal prisoner grievances falls under the conduct protected by the First Amendment and thus is actionable under § 1983. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (holding that prison officials may not retaliate against prisoners for petitioning for redress of grievances).

Second, Plaintiff must show that he was subject to an adverse action. *Baldauf*, at *7. In the prison context, "an adverse action is one that would 'deter a person of ordinary firmness'

from the exercise of the right at stake.'" *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir.

1999) (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).  Plaintiff alleges that on April

11, 2003 he was transferred out of CTCF allegedly in retaliation for filing prisoner grievances

against Defendant Corbin.  (Am. Compl. ¶¶ 52–53.)  Among his "losses due to [the] alleged

retaliatory transfer," Plaintiff lists the following: 1) loss of a "premium, forth [sic] floor, outside

corner, single cell"—a "privilege earned by the plaintiff for being report free, [receiving] good

work ratings and [remaining] in good standing with the cellhouse staff,"—and transferred

instead to a "double bunk[] at the new facility, AVCF;" 2) loss of "his cellhouse hobby permit

and supplies . . . [and] work stall" and associated financial costs; 3) loss of employment as an

electrician for which he had been trained and licensed; 4) loss of "earn [sic] time awards;" and 5)

loss of  "a premium job position" at the Tag Plant.[4]  (Am. Compl. at 14.)  Defendant Corbin

merely denies, without elaboration, that Plaintiff suffered these "losses."  (Answer at 4.)  Indeed,

the defendant does not address this prong of the retaliation analysis in his motion.  Clearly, there

is a genuine factual dispute as to whether an action resulting in losses such as those allegedly

sustained by the Plaintiff would deter a person of ordinary firmness from filing prisoner

grievances.

   Third, for his claim to survive summary judgment, Defendant must show that no genuine

issue exists as to whether there is "a causal connection" between Plaintiff's filing of grievances

---

[4] The Tag Plant job was the position Plaintiff had requested and allegedly received "CTCF Classification/Job Board"  approval for prior to Defendant Corbin denying his job change request.  (Am. Compl. ¶¶ 25–29.)

and his transfer from CTCF to AVCF. *Baldauf*, 2008 WL 280839, at *7. "An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (quotations and citation omitted). That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiff[] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

Plaintiff alleges that "the Defendant, Dennis Corbin . . . retaliated against [him] . . . [in] response . . . to the plaintiff's attempts to . . . request[] a job assignment change and the ensuing administrative grievances filed to attempt to obtain this job change." (Am. Compl. ¶¶ 4–7.) If this allegation stood alone, it would be insufficient, but, Plaintiff's Amended Prisoner Complaint lists specific facts that allegedly show Defendant Corbin retaliated against Plaintiff for filing grievances by "orchestrating" his transfer to AVCF. First, Plaintiff asserts that on April 10, 2003, his case manager, John Gahn, informed him that "[Plaintiff] was being transferred . . . [and] that he should not have tried for that job change and filed those grievance's [sic] against Mr. Corbin." (*Id.* ¶ 51.) The fact that Mr. Gahn allegedly made this statement is notable because he was also the author of the Facility Transfer Summary. (Am. Compl., Ex. 15; *see also* Def.'s Reply, Ex. A-2.)

11

Plaintiff further alleges that on February 28, 2003 Defendant Corbin placed a facility need hold on the plaintiff until February 28, 2004 (*Id.*, Ex. 1C), thereby preventing Plaintiff's job assignment change to the Tag Plant.  (*Id.* ¶ 30; Ex. 1A–D; *see also* Def.'s Mot., Ex. A-5 ¶ 5.) Defendant Corbin states that "[he] felt that after the maintenance department provided [Plaintiff's] training and licensing expense, [Plaintiff] could help the department out."  (Aff. of Dennis Corbin ¶ 5.)  Plaintiff claims that between February 28, 2003 and April 11, 2003, Defendant Corbin "released the plaintiff from his facility hold" in order to facilitate Plaintiff's transfer to AVCF in retaliation for Plaintiff's filing of grievances requesting a job change.  (*Id.* ¶ 68.)  Plaintiff alleges that his transfer "within twenty-four days" of receiving notice of the one year facility hold placed on him by the defendant demonstrates that his transfer to AVCF was retaliatory.  (*Id.* ¶ 83.)

Plaintiff further maintains that the timing of his transfer to AVCF is evidence that it was done in retaliation for filing grievances against Defendant Corbin.  (*Id.* ¶ 76–77.)  Plaintiff claims he mailed a letter detailing his concerns about "state electrical law violations" authorized by Defendant Corbin to the Colorado Inspector General's Office on January 2, 2003.  (*Id.* ¶ 21.) Plaintiff states that on the same day, in order to avoid being "associated with the foregoing violations[,] . . . he requested . . . a job change to the 'Tag Plant.'" (*Id.* ¶¶ 25–27) (internal quotation marks added.)  Plaintiff asserts that on January 9, 2003 his job change request was approved by the "CTCF Classification/Job Board Committee."  (*Id.* ¶ 29.)  Plaintiff claims that on January 14, 2003 he was notified that Defendant Corbin "would not release the plaintiff from his [current] job assignment because the defendant had a facility need hold placed on the

12

plaintiff."  (*Id.* ¶ 30.)  Plaintiff claims the facility need hold was placed on him "due to the fact

the defendant had helped and paid for the plaintiff's electrician license."  (*Id.*; Ex. 1C.)  Plaintiff

alleges he commenced his first grievance against Defendant Corbin for denying his job change

request on January 27, 2003.  (*Id.* ¶ 33.)  Plaintiff's Step III grievance reiterated his request for a

job change in order to avoid becoming "a[n] accessory . . . [to] code violations that might

endanger staff or inmates" allegedly authorized by Defendant Corbin.  (*Id.*, Ex. 1D.)  Plaintiff's

grievance was denied on April 4, 2003.  (*Id.*, Ex. 1E.)  Plaintiff alleges that an Executive

Assignment Order was issued on April 7, 2003 authorizing Plaintiff's "facility transfer" from

CTCF to AVCF.  (*Id*. ¶ 63; Ex. 10.)  Plaintiff alleges the proximity in time between his

"complaints against the defendant[] concerning the violation of state electrical laws . . . [and] the

plaintiff's request for a job change . . . [through the] [g]rievance process" demonstrates that

"Defendant Dennis Corbin orchestrated this alleged retaliatory transfer of the plaintiff."  (*Id.* ¶

76–77.)

      Plaintiff further claims that inconsistencies in the documentation required to transfer an

inmate as per CDOC regulations support his claim that the transfer was retaliatory.  (*Id.* ¶ 81.)

Plaintiff asserts that in response to the grievance he filed on April 21, 2003, he was informed that

"the decision to move [him] was based on a facility and departmental bed space need."  (*Id.* ¶ 84,

18.)  Similarly, Defendant Corbin's sworn affidavit states that it was his "understanding [that

Plaintiff] was transferred to another facility based on facility and department bed space."  (Aff.

of Dennis Corbin ¶ 7.)  However, none of the documents before the court, including the records

documenting Plaintiff's transfer, list "bed space" as the reason for Plaintiff's transfer.  (*See* Am.

Compl. at 11–16.)  Defendant Corbin asserts that "[Plaintiff] was transferred by Offender

Services," (Def.'s Reply, Ex. A-5 ¶ 22) and submits for the court's review the response to

Plaintiff's interrogatories of William Zalman, Director of CDOC Offender Services, and Paul

Hollenbeck, CDOC Classification Administrator with oversight responsibility for "the

management of [] CDOC bed space in the facilities[] [and the] movement of [] offenders."  (*Id.*,

Ex. A-3–A-4.)  Noticeably absent from either document is any discussion of the reason(s)

underlying the plaintiff's transfer from CTCF to AVCF.  Moreover, contradicting Defendant

Corbin's affidavit is "[Mr.] Hollenbeck's Response to Plaintiff's First Set of Interrogatories and

Request for Production of Documents,"

Indeed, the "bed space" rationale appears to be squarely contradicted by the April 11,

2003 Facility Transfer Summary completed by Plaintiff's Case Manager, John Gahn.  (*Id.*, Ex.

15.)  Therein, Mr. Gahn states the following with regard to Plaintiff's transfer to AVCF: "routine

move—did not want to work as electrician at CTCF any longer."  (*Id.*)  Plaintiff alleges this

statement "establishes a[n] affirmative link between the plaintiff's transfer . . . [and] the

plaintiff's job change request and grievances submitted against the defendant."  (Pl.'s Resp. at

3.)  Finally, Plaintiff alleges that despite having a year-long facility need hold placed on him just

twenty-four days earlier, the fact that he was "singled out and transferred" on the basis of "bed

space needs," among "three hundred plus inmates" who were not on facility holds demonstrates

that his transfer to AVCF was retaliatory.  (Am. Compl. ¶¶ 86–87.)

"[A] plaintiff may present circumstantial evidence of a retaliatory intent in order to

establish a retaliation claim." *Collopy v. City of Hobbs*, 27 Fed. Appx. 980, 986 (10th Cir. 2001)

14

(unpublished decision). *See also Thaddeus-X v. Blatter*, 175 F.3d at 399 (circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate evidence to establish motive for purposes of a First Amendment retaliation claim).

On summary judgment, the moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. at 325. In support of his motion for summary judgment, Defendant Corbin submits only his own sworn affidavit. (Def.'s Mot., Aff. of Dennis Corbin.) Therein, Defendant states that he "did not have the authority to transfer any inmate from one correctional facility to another[,] . . . did not cause Mr. Rounds to be transferred[,] . . . [and] did not request of anyone that Mr. Rounds be transferred." (*Id.* ¶ 8.) Furthermore, Defendant Corbin asserts that the "transfer of plaintiff Rounds was initiated by the transfer report submitted by plaintiff's case manager, John Gahn." (Def.'s Reply at 3; *see also* Am. Compl. at 16.) Defendant's motion and affidavit do not persuade the court that no genuine dispute of material fact exists. Rather, Defendant Corbin's summary denials and direct contradictions of Plaintiff's allegations confirm that a genuine issue of material fact does exist.

In light of Plaintiff's extensive factual allegations and this court's mandate to view the factual record and reasonable inferences therefrom in the light most favorable to the Plaintiff, *Byers v. City of Albuquerque*, 150 F.3d at 1274, the court finds a genuine issue for trial on the material question of whether a causal connection existed between Plaintiff's filing of grievances against Defendant Corbin and his transfer to AVCF.

       *2)*       ***Personal Participation – 42 U.S.C. § 1983***

       Defendant asserts that "he had no personal participation in the transfer of Mr. Rounds." (Def.'s Mot. at 4.)  *Alvarado* provides that "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

       Personal participation is an essential allegation in a section 1983 civil rights action.  *Bennett v. Passic*, 545 F.2d 1260, 1262–63.  *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) (stating that before liability may be imposed, a supervisor must have "participated or acquiesced" in the conduct which constitutes a constitutional deprivation).  To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

       Here, Plaintiff alleges that Defendant Corbin, by "orchestrating" his transfer to AVCF in retaliation for filing grievances, personally violated his First Amendment rights.  (Am. Compl. ¶ 77.)  This allegation presents a reasonable inference—that Defendant Corbin initiated Plaintiff's transfer—which must be drawn in the Plaintiff's favor as the nonmovant on summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d at 1274.  Contrarily, Defendant Corbin asserts that

Plaintiff's transfer "was initiated by the transfer report submitted by plaintiff's case manager, John Gahn," and directs the court's attention to Defendants Exhibit A-2.  (Def.'s Reply at 3.) However, the document cited by Defendant as **initiating** Plaintiff's transfer, the "CDOC Facility Transfer Summary" (Def.'s Reply, Ex. A-2) is dated **four days after** the Executive Assignment Order authorizing the transfer.  (Am. Compl. at 12.)

Moreover, "[Mr.] Hollenbeck's Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents" (Def.'s Reply, Ex. A-4) appears to contradict Defendant Corbin's affidavit by suggesting a different document initiated Plaintiff's transfer.  Mr. Hollenbeck states that with regard to Plaintiff's transfer from CTCF in April 2003, Offender Services received "[p]roper documented paperwork . . . includ[ing] the Inmate Reclassification Custody Rating signifying a request for lateral transfer" (*Id.* at 2) and on the basis of this request, "the case was processed and the offender was moved. (*Id.* at 5.)  However, the Inmate Reclassification Custody Rating, cited by Mr. Hollenbeck as requesting Plaintiff's transfer, is dated **2 days after** the Executive Assignment Order authorizing it.  (Am. Compl. at 12.)  The defendant fails to persuade the court that either document it asserts initiated Plaintiff's transfer indeed had this effect when created.  Unexplained, also, is how the facility need hold undisputedly placed and steadfastly kept on the Plaintiff by Defendant Corbin, was suddenly overcome to allow his transfer to another facility.

As the issue of how Plaintiff's transfer originated is vital to the case at bar, the court is astonished at the void left in the record by the absence of official CDOC records documenting Plaintiff's transfer.  The court finds that there is a genuine, outstanding dispute over whether

Defendant Corbin initiated, participated in, or orchestrated Plaintiff's transfer.   This is not only a material fact which might affect the outcome of this suit under the governing law, *Allen v. Muskogee*, 119 F.3d at 839, it is likely <u>the</u> material fact needed for resolution of the case.

### 3)   *Qualified Immunity*

Defendant Corbin asserts he is entitled to qualified immunity with respect to Plaintiff's First Amendment retaliation claim.   (Def.'s Mot. at 3.)   Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   When analyzing the issue of qualified immunity, the court must determine (1) whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right; and (2) whether the right was clearly established at the time of the violation. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).

Here, the filing of formal prisoner grievances falls under the conduct protected by the First Amendment. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (holding that prison officials may not retaliate against prisoners for petitioning for redress of grievances). Plaintiff has alleged that Defendant Corbin caused him to be transferred to a different facility as a consequence of the formal prisoner grievances filed by the plaintiff against Defendant Corbin.

"Prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution." *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) (citing *Murphy v. Missouri Dept. of Correction*, 769 F.2d 502, 503 (8th Cir. 1985).) Prisoners' First Amendment rights were clearly established long before the events in this case. *See Frazier.* Accordingly, this court finds that Plaintiff has sufficiently alleged a violation of his First Amendment rights to be free of retaliation for the exercise of protected conduct and that this right was clearly established at the time of the alleged violation. Consequently, the court finds that Defendant Corbin is not entitled to qualified immunity on Plaintiff's First Amendment claim against him in his individual capacity.

**2.    *Plaintiff's Motion for Summary Judgment***

Plaintiff seeks summary judgment on his First Amendment retaliation claim against Defendant Corbin. The court finds that Defendant Corbin's answer (Doc. No. 182) and sworn affidavit (Def.'s Resp., Ex. A-1) dispute Plaintiff's allegations sufficiently to raise genuine issues as to the material facts of this case. Accordingly, the court recommends that Plaintiff's motion for summary judgement be denied.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Plaintiff's "Motion for Summary Judgment" (Doc. No. 213) be DENIED. This court

FURTHER RECOMMENDS that Defendant's "Motion For Summary Judgment" (Doc. No. 215) be GRANTED in part and DENIED in part as follows:

1.      Defendant's Motion for Summary Judgment be GRANTED on Plaintiff's claims

for compensatory damages against Defendant Corbin, in his official capacity, and

that claim be dismissed with prejudice.

2.      Defendant's Motion for Summary Judgment be DENIED in all other aspects.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and

file written objections to the Magistrate Judge's proposed findings and recommendations with

the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that

does not put the District Court on notice of the basis for the objection will not preserve the

objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review." *United States v. One Parcel of Real Property Known As*

*2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make

timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's

decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d

at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be

both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of May, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge

21